## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| DECAPOLIS SYSTEMS, LLC, | JURY TRIAL DEMANDED |
| Plaintiff, | |
| v. | |
| UNIVERSITY HEALTH SYSTEM SERVICES OF TEXAS, INC., | Case No. 6:21-cv-01252-ADA |
| CENTRAL TEXAS COMMUNITY HEALTH CENTERS, d/b/a COMMUNITYCARE HEALTH CENTERS | Case No. 6:21-cv-01262-ADA |
| Defendants. | |

## DEFENDANTS' OPPOSED JOINT MOTION TO STAY
## PENDING RESOLUTION OF EPIC SYSTEMS CORPORATION'S
## DECLARATORY JUDGMENT ACTION AGAINST PLAINTIFF

**<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION ...........................................................................................................1

II.  BACKGROUND ...........................................................................................................2

   A.  Plaintiff's Suits Against Epic and Its Customers. ................................................2

   B.  Plaintiff's Pattern of Filing Customer Suits and Dismissing Manufacturer Cases. .............3

   C.  Epic's Declaratory Judgment Action Against Plaintiff. .......................................3

III. ARGUMENT .................................................................................................................4

   A.  The Customer-Suit Exception Factors Favor a Stay. ...........................................4

      1.  University Health and CommUnityCare Are Customers of the True Defendant
         in This Dispute. ..................................................................................................6

      2.  University Health and CommUnityCare Agree to Be Bound by the Outcome
         of the Epic/Decapolis Case. ...............................................................................7

      3.  Epic Is the Only Source of the Accused Products. ............................................8

   B.  The General Stay Factors Also Favor a Stay. ......................................................8

      1.  A Stay Will Not Unduly Prejudice or Present a Clear Tactical Disadvantage to
         Plaintiff. ..............................................................................................................8

      2.  A Stay Will Simplify the Issues in Question. ..................................................10

      3.  Discovery Has Not Started, and a Trial Date Has Not Been Set. ...................10

IV. CONCLUSION.............................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cellular Commc'ns Equip., LLC v. Samsung Elecs. Co.*,
No. 6:14-CV-759, 2015 WL 11143485 (E.D. Tex. Dec. 16, 2015) ..........................................8

*Collaborative Agreements, LLC v. Adobe Sys. Inc.*,
No. 1-14-CV-356-LY, 2015 WL 10818739 (W.D. Tex. Aug. 21, 2015)............................3, 5

*Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*,
No. A-13-CA-1025-SS, 2015 WL 3773014 (W.D. Tex. June 16, 2015) ................................7

*CyWee Grp. Ltd. v. Huawei Device Co. Ltd.*,
No. 2:17-CV-495-WCB, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018)........................7, 8, 9

*Decapolis Systems, LLC v. Epic Systems Corporation*,
No. 6:21-cv-00434-ADA ........................................................................................................1

*Decapolis Systems, LLC v. Epic Systems Corporation*,
No. 6:21-cv-00434-ADA, Dkt. 1 ...........................................................................................1

*Glenayre Elecs., Inc. v. Jackson*,
443 F.3d 851 (Fed. Cir. 2006)................................................................................................6

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*,
No. 2:16-cv-00618-RWS-RSP, 2017 WL 365398 (E.D. Tex. Jan. 25, 2017)..............4, 5, 6, 7

*In re Google Inc.*,
588 F. App'x 988 (Fed. Cir. 2014) ........................................................................................4

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990)............................................................................................4, 9

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
342 U.S. 180 (1952)...............................................................................................................6

*Kirsch Rsch. & Dev., LLC v. Bluelinx Corp.*,
No. 6:20-CV-00316-ADA, 2021 WL 4555803 (W.D. Tex. Oct. 4, 2021)......................4, 7, 8

*Lighthouse Consulting Grp., LLC v. Bank of Am., N.A.*,
No. 219CV00250JRGRSP, 2020 WL 6781978 (E.D. Tex. Mar. 26, 2020).........................8, 9

*In re Nintendo of Am., Inc.*,
756 F.3d 1363 (Fed. Cir. 2014)............................................................................................3, 4

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F.3d 1349 (Fed. Cir. 2011)...........................................................................................3, 4, 6

**Statutes**

28 U.S.C. § 1400(b) .........................................................................................................................1

## I.    __INTRODUCTION__

Plaintiff Decapolis Systems, LLC ("Plaintiff" or "Decapolis") filed patent infringement suits against Defendants Central Texas Community Health Centers ("CommUnityCare") and Bexar County Hospital District d/b/a University Health ("University Health")[1] (collectively "Defendants" or "Customer Defendants"). CommUnityCare and University Health are customers of Epic Systems Corporation ("Epic"), and are merely users of the accused system, which is Epic's electronic health records (EHR) software. Epic designs, develops and licenses that software, and therefore is the true defendant in this dispute. For the reasons stated in this Motion, Defendants' cases should be stayed under the customer-suit exception.

Indeed, Plaintiff had originally sued Epic in this District for infringement of the same two patents asserted here relying on nearly identical allegations of infringement as those alleged against the customer defendants. Plaintiff voluntarily dismissed that case after Epic challenged venue as improper, but before doing so, Plaintiff sued Epic's customers in this District as a transparent attempt to keep its infringement suit against Epic's software in this District. With its customers dragged into the dispute, Epic filed a complaint in the Southern District of Florida, where Plaintiff is organized and keeps its principal place of business, seeking a declaratory judgment of noninfringement of the same patents at issue here.[2]

Epic's case against Decapolis in the Southern District of Florida will necessarily resolve all issues in the CommUnityCare and University Health cases, particularly given that both defendants will stipulate to be bound by the final outcome in the Florida case. The Federal Circuit

---

[1] Defendant University Health concurrently files herewith a Motion for Substitution of Defendant to correct the entity name from University Health Services of Texas, Inc. to Bexar County Hospital District d/b/a University Health.

[2] Epic's Complaint also seeks a Declaratory Judgment of invalidity of U.S. Patent No. 7,464,040.

has repeatedly held that cases against manufacturers should take precedence over cases against customers. The same is certainly true here, and the cases against CommUnityCare and University Health should be stayed.

## II.    BACKGROUND

### A.    Plaintiff's Suits Against Epic and Its Customers.

Plaintiff filed a complaint against Epic on April 29, 2021, alleging infringement of patent nos. 7,490,048 and 7,464,040, which are the same two patents asserted against CommUnityCare and University Health. *Decapolis Systems, LLC v. Epic Systems Corporation*, No. 6:21-cv-00434-ADA, Dkt. 1.[3]

Epic responded to that complaint by moving to dismiss for improper venue or to transfer venue on June 22, 2021. *Id.*, Dkt. 10. As set forth in that motion, Epic does not have a "regular and established place of business" in the Western District of Texas as required for venue to be proper under 28 U.S.C. § 1400(b). *Id.* Instead, Epic is incorporated in and maintains its headquarters in the Western District of Wisconsin.

Epic's motion initiated a three-month venue discovery period per the Court's Standing Order, which concluded on September 22, 2021. Plaintiff's minimal discovery efforts over the three-month period and request for further delay are detailed in Dkt. 21 at 1-3. Plaintiff did not file an opposition brief; instead, it filed an amended complaint four months after Epic filed its motion, on October 20, which added de minimis conclusory allegations purportedly relating to venue. Dkt. 18 at ¶¶ 6-7. Because Plaintiff failed to seek leave of court to file an amended complaint, and because an amended complaint was not the proper method by which to oppose the venue motion, Epic moved to strike the amended complaint. Dkt. 21 at 3–4. The Court granted Epic's motion to

---

[3] Cites to Dkt. __ refer to docket entries from *Decapolis Systems, LLC v. Epic Systems Corporation*, No. 6:21-cv-00434-ADA unless otherwise noted.

strike on December 14 and gave Decapolis 14 additional days to respond to Epic's motion to dismiss and transfer. Dkt. 23.

During the time between Epic filing its motion to strike and the Court's granting that motion, Plaintiff filed the two cases against University Health and CommUnityCare—Epic's customers—for infringement of the same two patents, based on the same Epic electronic heath records systems alleged to infringe the same two patents.

Instead of responding to Epic's motion to dismiss and transfer, Plaintiff voluntarily dismissed its complaint against Epic on December 20. Dkt. 24.

## B.    Plaintiff's Pattern of Filing Customer Suits and Dismissing Manufacturer Cases.

Plaintiff has utilized the same strategy of dismissals and filing customer suits against other EHR companies, filing eleven cases asserting the same two patents from April 22 to June 29 in this District, including several suits where venue was unquestionably improper. After those manufacturers brought motions challenging venue, Plaintiff then exhausted the three-month discovery period, and ultimately dismissed those cases after further delays, while simultaneously filing a series of cases against some of those manufacturers' customers.[4] Since dismissing the manufacturer defendants, it has yet to file a complaint against a single one of those manufacturer defendants in the proper venue.

## C.    Epic's Declaratory Judgment Action Against Plaintiff.

On February 2, 2022, Epic filed a complaint against Decapolis in the Southern District of Florida, where Decapolis is organized and keeps its principal place of business. Epic seeks a declaratory judgment of noninfringement and invalidity of the '040 Patent and noninfringement of

---

[4] *See* Case Nos. 6:21-cv-00421 (Dr. Chrono Inc.); -00489 (Allscripts Healthcare, LLC); -00496 (Cerner Corporation); -00519 (NextGen Healthcare, Inc.; -00574 (Kareo, Inc.)

the '048 Patent, which Plaintiff initially asserted against Epic in this District, and now asserts against Epic's customers University Health and CommUnityCare.

## III.     <u>ARGUMENT</u>

The Court should stay the customer cases pending resolution of Epic's declaratory judgment action against Decapolis following Federal Circuit precedent: "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally takes precedence." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). Application of the customer-suit exception is particularly appropriate where claims against the manufacturer (Epic) will resolve the claims against the customers (University Health and CommUnityCare). *See Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 1-14-CV-356-LY, 2015 WL 10818739, at *2 (W.D. Tex. Aug. 21, 2015).

Further, the general stay factors also favor a stay of the customer suits. *First*, the stay will not unduly prejudice Plaintiff, as the issues in Epic's declaratory judgment action are the same as those in the customer suits, and University Health and CommUnityCare have agreed to be bound by the determination in the declaratory judgment action. *Second*, for the same reasons, staying the customer cases will simplify the issues in question because the determination in the declaratory judgment suit will resolve the liability allegations against University Health and CommUnityCare. *Third*, the customer cases are in their infancy: all related CRSR parties have not responded to the complaints, a CMC date has not been set, *Markman* briefing has not begun, discovery has not started, and no trial date has been set.

### A.     The Customer-Suit Exception Factors Favor a Stay.

Courts apply the customer-suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum. *Spread Spectrum*

*Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). The customer-suit exception trumps the traditional first-to-file rule so that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This rule avoids "imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Nintendo*, 756 F.3d at 1365.

For courts to apply the customer-suit exception, the case involving the manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Kirsch Rsch. & Dev., LLC v. Bluelinx Corp.*, No. 6:20-CV-00316-ADA, 2021 WL 4555803, at *2 (W.D. Tex. Oct. 4, 2021) (quoting *Spread Spectrum*, 657 F.3d at 1358). Courts should undertake a "flexible approach, . . . staying proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014).

Courts consider three factors in determining whether the customer-suit exception applies: (1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product. *Kirsch*, 2021 WL 4555803, at *2; *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 2:16-cv-00618-RWS-RSP, 2017 WL 365398, at *5 n.3 (E.D. Tex. Jan. 25, 2017). The "guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted). Each factor supports applying the customer-suit exception here.

1.    **University Health and CommUnityCare Are Customers of the True Defendant in This Dispute.**

University Health and CommUnityCare are merely users of the software at issue in Epic's declaratory judgment action against Decapolis. Indeed, the allegations against University Health and CommUnityCare are almost identical to the allegations Plaintiff asserted previously against Epic. For example, comparing the CommUnityCare complaint (No. 6:21-cv-01262-ADA, Dkt. 1) and the Epic complaint (No. 6:21-cv-00434-ADA, Dkt. 1), paragraphs 1–30 are for the most part identical and the "Accused Instrumentalities" in the CommUnityCare complaint are Epic's MyChart and EpicCare products, which are the same products alleged in the complaint against Epic. *Compare* No. 6:21-cv-01262-ADA, Dkt. 1, Figs. 2-4, ¶ 31 and No. 6:21-cv-00434-ADA, Dkt. 1, Figs. 4 and 5, ¶ 31 (ii) and (iii) (citing Epic's MyChart and EpicCare products). The same is true for the University Health complaint. *See* No. 6:21-cv-01252-ADA, Dkt. 1, Figs. 2-4, ¶ 31. Also, the paragraphs in Count I and Count II alleging infringement against University Health and CommUnityCare for each asserted patent are nearly identical. *See*, Dkt. 1 in No. 6:21-cv-01252 and -01262.

The fact that University Health and CommUnityCare are users of Epic's software and not technically "resellers" of a product is irrelevant, as Epic is still the "true defendant" in the customer suits. *See Glob. Equity*, 2017 WL 365398, at *10 (rejecting plaintiff's "argument that the customer suit exception d[id] not apply because the Amazon customer Defendants [were] not 'mere resellers' of Amazon technology"); *Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 1-14-CV-356-LY, 2015 WL 10818739, at *3 (W.D. Tex. Aug. 21, 2015) ("Even though the facts of this case and the relationship between Adobe and the Customer Defendants are slightly different than the manufacturer-customer relationship typical in a 'customer-suit exception to the first-to-file

rule,' the court concludes that 'the same general principles govern' and that Adobe is the 'true defendant' in this case.") (citation omitted).

There can be no dispute that Epic is the true defendant here. The Figures in the complaints confirm as much. *See* Dkt. 1 in No. 6:21-cv-01252, and -01262, Fig. 2 (citing MyChart and stating "MyChart licensed from Epic Systems Corporation" in the lower right corner); Fig. 3 (citing EpicCare); Fig. 4 (citing EpicCare and stating "powered by Epic" in the upper right corner and "Licensed from Epic Systems Corporation in the lower left corner").

Ultimately, what matters is that resolution of Epic's case against Plaintiff will resolve this case for Epic's customer defendants. If Epic is found not liable for infringement, that will be dispositive of Plaintiff's claims against Epic's customers for infringement of the same patents. *See, e.g., Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185-86 (1952) (judgment in favor of a manufacturer accused of infringing patent bars suits against customers). On the other hand, if Plaintiff obtains judgment in its favor against Epic, it will have exhausted its rights as a patent holder and will be precluded from collecting damages with respect to the same infringing product from a downstream user like University Health and CommUnityCare. *See, e.g., Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) (precluding plaintiff from seeking damages from customers because damages already collected from manufacturer).

Lastly, as the manufacturers of the accused products, Epic has a "greater interest in defending its actions against charges of patent infringement." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted).

    **2.**    **University Health and CommUnityCare Agree to Be Bound by the Outcome of the Epic/Decapolis Case.**

University Health and CommUnityCare agree to be bound the outcome of the Southern District of Florida case, which favors application of the customer-suit exception. *Glob. Equity*,

2017 WL 365398, at *5 n.3; *see CyWee Grp. Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-CV-495-WCB, 2018 WL 4002776, at *4 (E.D. Tex. Aug. 22, 2018) (holding that an agreement to be bound by the infringement determination in the manufacturer case supports a stay).

### 3.    Epic Is the Only Source of the Accused Products.

Plaintiff's infringement allegations against University Health and CommUnityCare concern the same products that are at issue in the Southern District of Florida declaratory judgment action (and the now-dismissed Western District of Texas case against Epic). Because those products were developed and licensed by Epic to its customers, there is no other source of those products. This factor also favors a stay. *Glob. Equity*, 2017 WL 365398, at *5 n.3.

In sum, the customer-suit exception factors all support staying the cases against University Health and CommUnityCare.

### B.    The General Stay Factors Also Favor a Stay.

The general stay factors also support staying the customer cases. In deciding whether to stay a patent case, courts typically consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Kirsch*, 2021 WL 4555803, at *3; *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. A-13-CA-1025-SS, 2015 WL 3773014, at *2 (W.D. Tex. June 16, 2015). Here, all three factors favor a stay.

### 1.    A Stay Will Not Unduly Prejudice or Present a Clear Tactical Disadvantage to Plaintiff.

Even if the customer cases are stayed, Plaintiff may proceed with its claims that Epic's EHR system infringes the asserted patents in the Southern District of Florida action. *See Glob. Equity*, 2017 WL 365398, at *10 (finding no prejudice where patent validity and infringement

issues would be decided in the declaratory judgment action). In fact, that venue is more convenient for Plaintiff because it is organized and maintains its principal place of business in that District and has no connection to the Western District of Texas.

Additionally, Plaintiff can only obtain the discovery necessary for its claims from Epic, not University Health and CommUnityCare. *See Kirsch*, 2021 WL 4555803, at *5 ("The customer-suit exception is . . . premised on the principle that the bulk of the relevant evidence will come from the Manufacturer of an accused product—not a customer."); *Lighthouse Consulting Grp., LLC v. Bank of Am., N.A.*, No. 219CV00250JRGRSP, 2020 WL 6781978, at *3 (E.D. Tex. Mar. 26, 2020) ("[A] stay would seem to simplify the resolution of discovery disputes in these cases."); *CyWee Grp.*, 2018 WL 4002776, at *3 (finding that "a stay would obviate the need for non-party discovery from" the manufacturer in the customer case). Here, the customer defendants were merely chosen so that Plaintiff could bring an infringement claim based on Epic's software in this District, not because they have any special relevant information for the infringement case. Indeed, Plaintiff could have sued any Epic customer in any other district in the country. There is thus no significance to these customer cases and no reason not to stay them while the Southern District of Florida action proceeds.

Lastly, Plaintiff cannot argue any prejudice cause by delay (if any delay actually exists) because as a non-practicing entity it faces no potential harm in the marketplace, such as price erosion, lost profits, or loss of market share. Also, Plaintiff did not seek a preliminary junction in either customer case, or its original case against Epic, which undermines any claim of undue prejudice. *Cellular Commc'ns Equip., LLC v. Samsung Elecs. Co.*, No. 6:14-CV-759, 2015 WL 11143485, at *2 (E.D. Tex. Dec. 16, 2015) ("When a patentee seeks exclusively monetary damages, as opposed to a preliminary injunction or other relief, 'mere delay in collecting those

damages does not constitute undue prejudice.'") (citations omitted). Because Decapolis faces no undue prejudice or tactical disadvantage, this factor weighs strongly in favor of a stay.

### 2.    A Stay Will Simplify the Issues in Question.

University Health and CommUnityCare's agreement to be bound by the infringement and invalidity outcomes in the Southern District of Florida case will also reduce the burden on all parties and the Court. Plaintiff may resolve its disputes in fewer proceedings, saving significant litigation expenses for Plaintiff, University Health and CommUnityCare. Additionally, staying this case will reduce the burden on the Court's limited resources by eliminating unnecessary motion practice, hearings, and a trial for each customer defendant. This factor favors a stay. *See Katz*, 909 F.2d at 1464; *Lighthouse Consulting*, No. 2020 WL 6781978, at *3 (finding that stay would "result in a significant simplification" of the customer cases where customers had agreed to be bound by manufacturer's declaratory judgment action).

### 3.    Discovery Has Not Started, and a Trial Date Has Not Been Set.

The customer defendant cases are in their infancy. University Health and CommUnityCare filed their answers this same day, and all remaining CRSR defendants' responses to the complaints will not be complete until early March 2022. Further, no CMC date, *Markman* hearing date, or case schedule has been set. This factor also weighs in favor of a stay. *Cf. CyWee Grp. Ltd.*, 2018 WL4002776, at *4 (finding this factor weighed in favor of a stay even though claim construction had begun and a pretrial conference had been set); *Lighthouse Consulting*, 2020 WL 6781978, at *3 (finding this factor weighed "slightly in favor of" a stay, even where "discovery ha[d] already been ongoing for a few months" and the claim construction hearing was less than six weeks away).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant this motion and stay the cases against University Health and CommUnityCare until the Southern District of Florida action is resolved.

Dated:  February 4, 2022

Respectfully submitted,

*/s/ Richard D. Milvenan*

Richard D. Milvenan (State Bar No. 14171800)
McGINNIS LOCHRIDGE LLP
1111 W. 6th Street, Bldg. 2, Suite 400
Austin, TX 78703
Tel.:  (512) 495-6000
Fax:  (512) 495-6093
rmilvenan@mcginnislaw.com

Nick G. Saros (*pro hac vice to be filed*)
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Tel.:  (213) 239-5100
Fax:  (213) 239-5199
nsaros@jenner.com

*Attorneys for Defendant Bexar County*
*Hospital District d/b/a Universal Health*
*and f/k/a University Health System*
*(incorrectly named as University Health*
*System Services of Texas, Inc.) and*
*Defendant Central Texas Community*
*Health Centers, d/b/a CommUnityCare*
*Health Centers*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(G), movants certify that counsel for the parties conferred on February 3, 2022, in good faith to attempt to resolve the matter by agreement. The parties did not reach an agreement, and Plaintiff opposes the movants' motion.

*/s/ Richard D. Milvenan*
Richard D. Milvenan

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 4, 2022, a true and correct copy of the foregoing was served on all counsel of record who have appeared in this case via the Court's CM/ECF system per Local Rule CV-5.

*/s/ Richard D. Milvenan*
<u>Richard D. Milvenan</u>
