IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **DECAPOLIS SYSTEMS, LLC,**<br>*Plaintiff*<br><br>v.<br><br>**UNIVERSITY HEALTH SYSTEM SERVICES OF TEXAS, INC.,**<br><br>**CENTRAL TEXAS COMMUNITY HEALTH CENTERS, d/b/a COMMUNITYCARE HEALTH CENTERS,**<br>*Defendants.* | Case No. 6:21-cv-01252-ADA<br><br>Case No. 6:21-cv-01262-ADA |

## ORDER GRANTING DEFENDANTS' MOTION TO STAY

Before the Court is Defendants University Health System Services of Texas, Inc., and Central Texas Community Health Centers' (collectively, "Defendants") Opposed Motion to Stay Pending Resolution of Epic Systems Corporation's ("Epic") Declaratory Judgment Action Against Plaintiff. ECF No. 8. Defendants filed their Motion on February 4, 2022. Decapolis filed its opposition on February 11, 2022. ECF No. 11. Defendants replied on February 18, 2022. ECF No. 15. After careful consideration of the briefing and applicable law, the Court **GRANTS** Defendants' Motion to Stay.

### I.   FACTUAL BACKGROUND

On December 1, 2021, and December 3, 2021, Decapolis filed patent infringement lawsuits in this Court against each of the Defendants.[1] Decapolis accused Defendants of infringing U.S.

---

[1] Cites to ECF No. __ refer to docket entries from No. 6:21-cv-01252-ADA unless otherwise noted.

1

Patent Nos. 7,464,040 and 7,490,048 (collectively, the "Asserted Patents") based on their use of Epic's electronic healthcare systems. *See generally* ECF No. 1 ¶¶ 31–69.

Decapolis had previously filed a patent infringement lawsuit against Epic in this Court alleging infringement of the same patents. *See Decapolis Sys., LLC v. Epic Sys. Corp.*, No. 6:21-cv-00434-ADA. Epic filed a motion to dismiss for improper venue, and Decapolis eventually voluntarily dismissed the suit on December 20, 2021.

On February 2, 2022, Epic filed a declaratory judgment action in the Southern District of Florida ("the Supplier Suit"). *See Epic Sys. Corp. v. Decapolis Sys., LLC*, 9:22-cv-81073 (S.D. Fla. Feb. 2, 2022). Epic seeks a declaration that it does not infringe on the Asserted Patents and that they are invalid. *Id.* Defendants' Motion asks the Court to stay this case pending resolution of the declaratory judgment action in the Southern District of Florida (Case No. 9:22-cv-81073). *See* ECF No. 8 at 4.

## II. LEGAL STANDARD

A trial court has broad discretion to stay an action against a party to promote judicial economy. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-5, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Where suit is brought against a manufacturer and its customers, the action against the customers should be stayed pending resolution of the case against the manufacturer to promote judicial economy. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365-66 (Fed. Cir. 2014).

The "customer-suit exception" provides that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against

2

customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This exception "exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Nintendo*, 756 F.3d at 1365 (citation omitted). "[C]ourts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011).

To warrant a stay of the customer suit, the case involving the manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum*, 657 F.3d at 1358 (citing *Katz*, 909 F.2d at 1464). Courts are instructed to use a "flexible approach" to avoid wasteful expenditure of resources, and therefore "stay[] proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014); *see also Nintendo*, 756 F.3d at 1365-66 (the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination" (citations omitted)).

In determining whether the customer-suit exception applies, the court analyzes three factors: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 U.S. Dist. LEXIS 142173, at *14 (E.D. Tex. Aug. 22, 2018) (quoting *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, No. 2:13-CV-909, 2015 U.S. Dist. LEXIS 675, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015)). The "guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted).

The factors that courts typically consider when determining whether to grant a stay include: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *Kirsch Rsch. & Dev. LLC v. BlueLinx Corp.*, 6-20-cv-316, 2021 U.S. Dist. LEXIS 191694 (W.D. Tex. Oct. 4, 2021) (citing *In re Trustees of Bos. Univ. Pat. Cases*, No. CV 13-12327-PBS, 2014 WL 12576638, at *2 (D. Mass. May 16, 2014)).

### III.   ANALYSIS

#### A. The Customer-Suit Exception factors weigh in favor of a stay.

Defendants argue they are mere customers of Epic, the supplier of the accused instrumentalities that allegedly infringe on the Asserted Patents. They claim all of the customer-suit exception factors favor a stay. Decapolis does not address most of these factors. The Court holds that the customer-suit exception applies because: (1) Defendants are mere end-users of the accused products; (2) Defendants have agreed to be bound by the outcomes of the Supplier Suit; and (3) the supplier (Epic) is the only source of the accused products.

##### 1.  Defendants are mere end-users.

The Court finds that this factor weighs in favor of a stay because Defendants are mere end-users of the accused products. Decapolis contends its allegations do not "limit themselves only to [Defendants'] use of Epic's systems." ECF No. 11 at 3 (emphasis omitted). But the procedural history of this case contradicts Decapolis's argument. Decapolis accused both Epic and Defendants of infringing the same patents. *See* ECF No. 1 ¶¶ 31–69. Decapolis never alleged that Defendants manufacture the accused technology in this case. *Id.* Nor could it. Only after this Court dismissed the earlier-filed case against Epic—the manufacturer of the accused technology in this case—did

4

Decapolis file the instant case against Defendants. As Defendants note in their Motion, Decapolis's Complaint accuses them of infringement based almost entirely upon their use of Epic's software. *See id*. "[T]he manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (citing *Katz*, 909 F.2d at 1464). Because the Supplier Suit will decide both infringement and invalidity of the Asserted Patents here, that suit will resolve the "major issues" in this case.

Decapolis also suggests the customer-suit exception typically applies when a large number of customers are sued for "acts of infringement consist[ing] entirely of reselling a manufacturer's accused product." ECF No. 11 at 1. Decapolis unpersuasively relies on *In re Nintendo of America, Inc.*, to support this characterization of a typical customer-suit exception. 756 F.3d 1363 (Fed. Cir. 2014). The case is but one example, and whether a case is typical is not dispositive. Defendants do not need to be resellers for the customer suit exception to apply. *See Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 2:16-cv-00618-RWS-RSP, 2017 WL 365398, at *10 (E.D. Tex. Jan. 25, 2017) (finding the customer-suit exception applied despite the fact that the customer defendants were not resellers). This is in accord with the Federal Circuit's "flexible approach" which includes "staying proceedings if the [supplier's] suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014).

Moreover, Decapolis does not provide any evidence, and indeed never argues, that any of the Defendants manufacture or develop Epic's software. Because Decapolis has not presented record evidence to the contrary, and because its Complaint is predicated entirely on Defendants' use of Epic's product, the Court finds that Epic is the "true defendant." Accordingly, this factor

favors a stay. *See Collaborative Agreements, LLC v. Adobe Sys. Inc.*, NO. 1-14-CV-356-LY, 2015 WL 10818739, at *1-3 (W.D. Tex. Aug. 21, 2015) (holding the customer-suit exception applied where the customer defendants were accused of using infringing software provided by the "true defendant").

### 2. Defendants agree to be bound by any decision in the Epic case.

Defendants have agreed to be bound by the outcome of the Supplier Suit. ECF No. 8 at 7. Therefore, this factor favors granting a stay.

### 3. Epic is the only source of the infringing product.

As indicated above, Defendants are mere end-users, and Epic is the only source of the primary infringing products identified in the Complaint. *See* ECF No. 1 at 9–10 Fig. 2–4. Accordingly, all three customer-suit exception factors weigh in favor of granting a stay under that exception. The Court now turns to the general stay factors.

## B. The general stay factors also weigh in favor of a stay.

In its determination of whether to grant a motion to stay under the customer-suit exception, the Court most heavily weighs the factors particular to that exception. *GreatGigz Sols., LLC v. Costco Wholesale Corp.*, No. 6-21-CV-00807, 2022 WL 1037114, at *3 (W.D. Tex. Apr. 6, 2022) (slip op.). But, for the sake of completeness, the Court will address Decapolis's concerns under the general stay factors as well.

### 1. Decapolis is not unduly prejudiced by a stay.

Under this factor, Decapolis complains that it will be unable to timely enforce its patent rights if this Court grants Defendants' motion. ECF No. 11 at 5. Decapolis argues that forcing it to assert its patents in the Supplier Suit will be prejudicial because the Southern District of Florida

has a longer time to trial. *Id.* For the following reasons, the Court disagrees and finds that this factor weighs in favor of granting a stay.

To be sure, Decapolis has a substantial interest in the speedy vindication of its property rights. Defendants' assertion that Decapolis cannot argue undue prejudice from a delay in this case due to its status as a non-practicing entity is unpersuasive. ECF No. 8 at 9–10. This Court has rejected that argument in other contexts, and now takes this opportunity to do so here. *See, e.g., VoIP-Pal.com, Inc. v. Amazon.com, Inc.*, No. 6:21-CV-00668-ADA, 2022 WL 2110697 (W.D. Tex. June 10, 2022) (rejecting the non-practicing entity argument in the motion-to-transfer context). Regardless of whether Decapolis is practicing its inventions, "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. GMC*, 899 F.2d 1078, 1080 (Fed. Cir. 1989). Moreover, Congress itself has acknowledged the importance of the "quick" and inexpensive resolution of patent disputes, going so far as to erect a sprawling administrative regime—that does not differentiate between worked and unworked patents—for that purpose. *See, e.g., Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). While Decapolis may not have a market share at stake if this lawsuit is slow to resolve, its rights as a patent owner must be respected, and the Court notes that Defendants' argument on this factor is contrary to public policy.

Nevertheless, the Court disagrees with Decapolis's characterization of its ability to enforce its patent rights in its home forum. Regardless of whether the Court stays this case, Decapolis will proceed in its enforcement of its patent rights against Epic—the manufacturer of the accused technology and "true defendant" in this series of cases—in the Southern District of Florida. *See Glob. Equity*, 2017 WL 365398, at *10 (finding no undue prejudice when validity and infringement issues will be decided by the declaratory-judgment action).

Decapolis additionally argues that the Southern District of Florida will take longer to reach trial in the Supplier Suit than this Court will in Defendants' cases. But the scheduling order in a related case in front of the same judge as the Epic action suggests otherwise. *See generally* ECF No. 16-1; *see also Maplebear Inc. d/b/a Instacart v. GreatGigz Solutions, LLC*, SDFL-9-21-cv-81998. Decapolis's owner, Raymond Joao, also owns GreatGigz, the defendant in a declaratory-judgment action filed against it by Instacart in the Southern District of Florida. ECF No. 16 at 4. And Judge Middlebrooks, the judge presiding over the *Instacart* case, is also presiding over Epic's declaratory judgment action. Judge Middlebrooks set the *Instacart* case for trial less than one year after filing, and given that the Epic case is on a similar schedule, validity and infringement issues in the Supplier Suit will likely be decided in the Southern District of Florida before this case concludes. ECF No. 16-1 at 1. Thus, the Court finds that this factor weighs in favor of granting a stay.

### 2. A stay will simplify the issues of the case.

Decapolis does not focus its arguments under this factor on the common issues between this case and the Supplier Suit, or on Defendants' consent to be bound by the resolution of the Epic action. Instead, Decapolis accuses Epic—but not Defendants—of forum shopping and blames Epic's conduct for not facilitating the consolidation of cases in this Court. ECF No. 11 at 6. Decapolis thus asks the Court not to "encourage[]" such a "clear insult to this Court." *Id*.

The Court does not find Defendants' conduct, or Epic's for that matter, to constitute forum shopping. Nothing in the record suggests that Epic's choice to litigate in Decapolis's home forum after successfully leaving an improper venue was motivated by being "terrified to litigate the issues" in this District. *Id.* at 5.

Putting aside Decapolis's forum-shopping allegations, the Court turns to the central issue under this factor. Even if Defendants had refused to be bound by the result of the Supplier Suit, the resolution of that case necessarily disposes of the cases here. If Epic is successful on either its noninfringement or invalidity causes of action in the Southern District of Florida, Defendants are not liable here either. And if Epic is found to infringe, Decapolis will be precluded from seeking damages against the Defendants here under the doctrine of patent exhaustion. *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006). Thus, the Court finds this factor to weigh in favor of a stay.

### 3. Discovery has not been completed, and a trial date has not been set.

It is this Court's practice to stay discovery until after the *Markman* hearing. Here, there has been no *Markman* and no fact or expert discovery. Thus, a stay would not impact discovery in this case. Moreover, discovery in these suits will focus largely on Epic because Epic is the entity engaged in design, development, and sale of the accused products. *See supra* Section III.A.1. A stay is therefore likely to streamline discovery in the Supplier Suit.

As for the trial date, this Court has not yet set one. The parties have similarly failed to file a scheduling order. This case is still in its infancy, and the parties have done very little to expeditiously resolve this dispute. A stay would therefore not uproot any minimal progress made in these cases.

## IV.   CONCLUSION

For the foregoing reasons, the customer-suit exception factors all weigh in favor of a stay: Defendants are not manufacturers but mere end-users; they have agreed to be bound by the outcome of the Supplier Suit; and Epic is the only source of the accused technology in this case. The general stay factors also favor a stay: Decapolis is not unduly prejudiced by a stay, a stay will

simplify the issues of the case, discovery has not been completed, and a trial date has not been set. Thus, Defendants' Motion is **GRANTED**. These two cases (Nos. 6:21-cv-01252-ADA and 6:21-cv-01262-ADA) are hereby **STAYED** pending full and final resolution of the declaratory judgment actions in the Southern District of Florida between Epic and Decapolis. The parties shall file a joint motion to enter a scheduling order within seven days of the completion of the Southern District of Florida case between Epic and Decapolis.

SIGNED this 30th day of June, 2022.

                                                          ALAN D ALBRIGHT
                                                         UNITED STATES DISTRICT JUDGE